**POTTS & POTTS**
HAWAIʻI TRIAL ATTORNEYS
DENNIS W. POTTS   #1121-0
*dennis@pottsalc.com*
TREVOR S. POTTS   #10806-0
*trevor@pottsalc.com*
American Savings Bank Tower
1001 Bishop Street, Ste. 745
Honolulu, Hawaiʻi 96813
Telephone No. (808) 537-4575

**LIDDLE SHEETS COULSON PC**
Nicholas A. Coulson*
ncoulson@lsccounsel.com
**Pro hac vice* application pending
975 East Jefferson Avenue
Detroit, MI 48207-3101
T: (313) 392-0015

Attorneys for Plaintiff
PRADEEP ARORA, on behalf of himself and all others similarly
situated,

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PRADEEP ARORA, on behalf of himself and all others similarly situated, | Civil No. _____ (Class Action) |
| Plaintiff, | CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |
| vs. | |
| HONOLULU STAR-ADVERTISER and OAHU PUBLICATIONS INC., jointly and severally, | |

```
                                    )
        Defendants.                 )
                                    )
_____         )
```

## COMPLAINT

Plaintiff Pradeep Arora, on behalf of himself and all others similarly situated ("**Plaintiff**") by and through his attorneys, Potts & Potts, and Liddle Sheets Coulson P.C., for his Complaint against Defendants Honolulu Star-Advertiser and Oahu Publication, Inc. (collectively, the "**Defendants**"), alleges and states as follows:

## **INTRODUCTION**

1.     Plaintiff, on behalf of himself and all others similar situated, brings this class action in relation to Defendants disclosing Plaintiff's personally identifiable information ("**PII**") without Plaintiff's consent.

2.     Plaintiff is a subscriber of Defendants' website, www.staradvertiser.com (the "**Website**"), which offers, *inter alia*, a wide array of video content.

3.     When Plaintiff watched videos on the Website, Defendants shared Plaintiff's PII with Facebook without notifying Plaintiff and without Plaintiff's consent.

4.     Defendants violated the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "**VPPA**") each time they knowingly disclosed Plaintiff's PII to Facebook without consent.

5.     Defendants are liable to Plaintiff for statutory damages in an amount not less than $2,500 for each disclosure of PII, punitive damages, attorneys' fees and costs.

## PARTIES

6.     Plaintiff is an individual that is over 18 years old and resides in Hawaiʻi. Plaintiff is a subscriber of Defendants' Website and watched videos on the Website.

7.     Defendant   Honolulu   Star-Advertiser   is   a   Hawaiʻi corporation with its principal place of business at 500 Ala Moana Blvd. #7, Honolulu, Hawaiʻi 96813. Defendant Honolulu Star-Advertiser is a subsidiary and/or affiliate of Defendant Oahu Publications, Inc. Defendant   Honolulu Star-Advertiser developed, owns, and/or operates the Website.

3

8.     Defendant Oahu Publications, Inc. is a Hawaiʻi corporation with its principal place of business at 500 Ala Moana Blvd. #7, Honolulu, Hawaiʻi 968113. Defendant Oahu Publications, Inc. developed, owns, controls, and/or operates the Website.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction pursuant to the Class Action Fairness Act ("**CAFA**"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate as there are more than 100 class members, at least one of the class members resides in another state, and the aggregate amount in controversy exceeds five million dollars ($5,000,000,000), exclusive of interest and costs.

10.    This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under a law of the United States, namely the VPPA.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants are residents of Hawaiʻi and their principal place of business is in Hawaiʻi.

12.    Further, Defendants' Terms of Use specify jurisdiction and venue as the Federal Courts of Hawai'i.[1]

## **GENERAL ALLEGATIONS**

13.    Defendants are a media publisher that developed, owns, and/or operates the Website, which receives millions of visits per year.

14.    In addition to written articles, the Website provides a wide array of video content.

15.    Defendants have over 50,000 online subscribers, who, *inter alia*, watch videos on the Website.

16.    Defendants require users to register and pay a subscription fee in order to read most of the articles and watch video content on the Website.

17.    To become a subscriber, Defendants require individuals to register and create a profile by providing PII, such as name, address, phone number, and email address, and pay a subscription fee in order to read most of their articles and watch video content on the Website.

---

[1] https://www.oahupublications.com/terms-of-service/ (accessed May 23, 2023); See "JURISDICTION".

18.   Facebook "require[s] people to connect on Facebook using the same name that they go by in everyday life"[2], such that a person can be identified by their Facebook account.

19.   When someone creates a Facebook account, a corresponding Facebook ID ("**FID**") is also created.

20.   FIDs are uniquely associated with Facebook accounts, such that an FID can be used to identify and view the associated Facebook profile. Accordingly, FIDs are PII.

21.   When someone becomes a subscriber to Defendants' Website, they receive recurring emails from Defendants with links to articles and videos published on the Website.

22.   Defendants monetize their Website by knowingly collecting and disclosing their subscribers' PII to Facebook, including data that personally identifies subscribers and the videos they view.

23.   Defendants' Website uses a code analytics tool called "Facebook Pixel," which was implemented at the discretion of Defendants.

---

[2] 2 https://transparency.fb.com/en-gb/policies/community-standards/account-integrity-and-authentic-identity/
(accessed May 23, 2023).

24.    Facebook Pixel tracks the actions of Website subscribers, such as the pages a subscriber views and the content they view.

25.    When someone watches a video on Defendants' Website, the video name and the viewer's FID are simultaneously sent to Facebook via Facebook Pixel.

26.    The video name/description and FID are sent to Facebook together and at the same time as a single piece of data.

27.    For example, this occurs when someone visits Defendants' website and clicks on an article titled "Olympic gold medalist Kristi Yamaguchi brings winter fun to Hawai'i" and watches the video provided in the article:



28.    Once a visitor clicks on this article, the video name and viewer's FID, which is

represented by the "c_user" cookie, are sent to Facebook:

:authority: www.facebook.com
:method: GET
:path: /tr/?id=1853083501571805&ev=PageView&dl=https%3A%2F%2Fwww.staradvertiser.com%2F2019%2F11%2F
29%2Fvideo%2 video-kristi-yamaguchi-brings-winter-fun-to-hawaii%2F&rl=https%3A%2F%2Fwww.staradver
tiser.com%2Fvideo%2F&if=false&ts=1671349320484&cd%5Bpartner_id%5D=251&cd%5Btagger_id%5D=fe023dd36
60d6ba3c2efd0e6fb341729&sw=1920&sh=1080&v=2.9.90&r=stable&ec=0&o=30&fbp=fb.1.1671345985016.174804
3978&it=1671349315244&coo=false&tm=1&rqm=GET&dt=kqcxegr26qkd10jkfugs4e2048j14g3c
:scheme: https
accept: image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
accept-encoding: gzip, deflate, br
accept-language: en-GB,en-US;q=0.9,en;q=0.8
cookie: sb=98qUYi6Dz516mz0QhNU6_uGv; datr=98qUYizi2ZvJJoQi91bT2MSn; c_user=10007          m_page
_voice=100075943015013; xs=28%3Ai4-70ufZ6VyhFg%3A2%3A1653918535%3A-1%3A-1%3A%3AAAcWdmA30_s2OTqAO3z
3ejCL2m_AxUHez-Ad-JFzpYjg; fr=0hFLmGQpHKd5CgYAo.AWWBUJr7rjKjVRGFdqTc2h9HRVM.Bjnr-C.IO.AAA.0.0.Bjn
r-C.AWUeHVO8rME; dpr=0.8999999761581421
referer: https://www.staradvertiser.com/

29.   The "PageView" component of Facebook Pixel discloses to Facebook the URL that a viewer has accessed (e.g., "video-kristi-yamaguchi-brings-winter-fun-to-Hawai'i").

30.   With the PageView data, someone can simply enter the URL into a browser to determine which video a person accessed/watched.

31.   The "c_user" cookie that is transmitted contains a viewer's unencrypted FID.

32.   A Facebook profile can be identified and viewed by appending an FID to the end of "Facebook.com," such that a person can be identified by their FID.

33.   When PageView data, including the URL, video name/description, and an FID are simultaneously disclosed, the video material accessed by a specific individual can be determined.

34.   Defendants knew that PageView data and FIDs are simultaneously disclosed by Facebook Pixel.

35.   Defendant also knew that such combined data identifies Website users and the videos they watched.

36.   Defendants did not obtain the consent of the Website's subscribers to disclose their PII or the video content they view.

9

37.   Website users are not given an opportunity to withdraw from or prohibit the disclosure of their PII or the video content they view.

38.   The disclosure of the subscribers' PII and/or video content they view is not incident to the ordinary course of business of Defendants (i.e., is not for debt collection, order fulfillment, request processing, or the transfer of ownership).

39.   Defendants' surreptitious disclosure of PII (i.e., an individual's FID paired with the name/description of video content they view) is an outrageous invasion of privacy and would be offensive to a reasonable person.

## The Video Privacy Protection Act

40.   In recognition of the risk of invasions of privacy, Congress passed the VPPA so that individuals can "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, pg. 8.

41.   The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable

10

to the aggrieved person for the relief provided in subsection (d)." 18 U.S.C. § 2710(b)(1).

42.   Under the VPPA, "the term 'video tape service provider' means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials..." 18 U.S.C. § 2710(a)(4).

43.   An entity that provides videos via streaming is a video tape service provider under the VPPA.

44.   Under the VPPA, "the term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

45.   Under the VPPA, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

46.   Where a video tape service provider knowingly discloses the PII of a consumer without consent, the aggrieved person may bring a civil action for, inter alia, statutory damages in an amount

not less than $2,500, punitive damages, attorneys' fees, and costs. 18 U.S.C. § 2710(c)(2)(A)-(D).

## **PLAINTIFF/PROPOSED CLASS REPRESENTATIVE**

47.   Plaintiff has had a Facebook account since at least 2010, which he is perpetually logged into.

48.   Plaintiff has been a subscriber of Defendants since March 2023.

49.   Plaintiff has had a Facebook account at all times since subscribing to the Website.

50.   To become a subscriber, Plaintiff provided Defendants with PII including his name, address, phone number, and email address.

51.   Plaintiff's Facebook profile and his email address contain his name, whereby Plaintiff can be personally identified by that information.

52.   Since becoming a subscriber, Plaintiff has regularly watched videos on Defendants' Website using the same device and/or browser in which he is logged into his Facebook account.

53.   Each time Plaintiff watched a video on the Website, Defendants   simultaneously   disclosed   Plaintiff's   FID   and   the

12

URL/name of the video/content that he viewed on the Website to Facebook via Facebook Pixel. This has occurred on frequent and reoccurring occasions too numerous to recount individually.

54.   This paired information personally identifies Plaintiff and the video material that he requested, obtained, accessed and/or watched on Defendants' Website.

55.   Plaintiff did not consent to the disclosure of his PII, in writing or otherwise, and Defendants did not attempt to obtain Plaintiff's consent in a form separate and distinct from other legal obligations.

56.   Defendants did not provide Plaintiff with an opportunity to withdraw from the disclosure of his PII.

57.   Defendants' disclosure of Plaintiff's PII was not related to an ordinary course of business (e.g., debt collection, order fulfillment, request processing, or any transfer of ownership).

## CLASS ALLEGATIONS

**A.    Definition of the Class**

58.   Plaintiff brings this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23 (the "**Class**" or "**Class**

**Members**"). Plaintiff seeks to represent a Class of persons preliminary defined as:"

> **All persons in the United States who have a Facebook account, are subscribed to** www.staradvertiser.com, **and watched one or more videos on that Website.**

This definition is subject to modification as discovery discloses further information. Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such sub-classes are appropriate.

59.    This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

    a.    The Class, which includes thousands of members, is so numerous that joinder of all Class Members is impracticable;

    b.    There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

    c.    Questions of law and fact, such as those enumerated below, which are common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

    d.    The claims of the representative party are typical of the claims of the Class;

    e.    A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

14

f.   The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

g.   There are no unusual difficulties foreseen in the management of this class action; and

h.   Plaintiff, whose claims are typical of those of the Class, through his experienced counsel, will zealously and adequately represent the Class.

**B.   Numerosity**

60.   There are tens of thousands of individuals who are subscribers of Defendants and have watched videos on Defendants' Website. Accordingly, the Class Members are so numerous that joinder of all parties is clearly impracticable.

61.   The prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

**C.   Commonality**

62.   Numerous common questions of law and fact predominate over any questions affecting individual Class Members including, but not limited to, the following:

a.   Whether Defendants collected PII of Class Members who visited their Website;

15

b.    Whether Defendants disclosed PII of Class Members who watched videos on their Website;

c.    Whether disclosure of PII via Facebook Pixel constitutes "knowing disclosure";

d.    The nature and extent of PII disclosed;

e.    How PII was disclosed and to whom;

f.    Whether Defendants' Website obtains informed written consent before disclosing PII of subscribers;

g.    Whether Defendants' Website provides a clear and conspicuous opportunity for subscribers to withdraw from disclosures on a case-by-case basis; and

h.    Whether the disclosures of Class Members' PII warrant punitive damages.

## D.    Typicality

61.    Plaintiff has the same interests in this matter as all other members of the Class and his claims are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, utilize the same complex evidence (e.g., expert testimony), rely upon the same legal theories, and seek the same type of relief.

16

62.   The claims of the Plaintiff and other Class Members have a common cause and their damages are of the same type. The claims originate from the synonymous disclosure of PII by Defendants without consent.

63.   All Class Members have been aggrieved by Defendants' disclosure of their PII without consent and are entitled to, *inter alia*, statutory damages.

**E.    Adequacy of Representation**

64.   Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and he does not have interests adverse to the Class.

65.   Plaintiff has retained the services of counsel who are experienced in complex class action litigation. Plaintiff's counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiff and all absent Class Members.

**F.    Class Treatment is the Superior Method of Adjudication**

66.   A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a.   Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

b.   Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendants with incompatible standards of conduct;

c.   Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

d.   Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

e.   In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

f.   The Plaintiff seeks relief relating to the Defendants' common actions and the equitable relief sought would commonly benefit the Class as a whole;

g.   The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

18

h.    The proposed class action is manageable.

## CAUSE OF ACTION I

## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT,

## 18 U.S.C. § 2710

66.    Plaintiff restates all allegations of this Complaint as if fully restated herein.

67.    Defendants, through their Website, are engaged in the business of delivering audio visual materials (e.g., videos) to the Plaintiff and Class in multiple states and across state borders, thus Defendants are a "video tape service provider" under the VPPA.

68.    The Plaintiff and Class are consumers under the VPPA because they are subscribers of Defendants, a video tape service provider, and have watched videos on Defendants' Website.

69.    When the Plaintiff and Class Members watched videos on Defendants' Website, Defendants knowingly disclosed their FIDs and the name of the video/content that they viewed to Facebook via Facebook Pixel.

70.    The disclosed information is PII because Facebook and anyone with access to that information can personally identify the

Plaintiff and Class Members, as well as the video content that each of those respective individuals viewed.

71.   The Plaintiff and Class did not consent to Defendants disclosing their PII.

72.   Defendants did not provide an opportunity for the Plaintiff and Class to withdraw from the disclosure of their PII.

73.   Defendants' disclosure of the Plaintiff's and Class's PII was not in the ordinary course of business.

74.   Defendants are liable, jointly, and severally, to the Plaintiff and Class for statutory damages of not less than $2,500 for each disclosure of their PII, punitive damages, attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A.   Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B.   Designation of the Plaintiff as representative of the proposed Class and designation of his counsel as Class counsel;

C.   Judgment in favor of the Plaintiff and Class Members as against the Defendants jointly and severally;

D.     An award to each Plaintiff and Class Member for statutory damages not less than $2,500 and punitive damages, including pre- and post-judgment interest;

E.     An award of injunctive relief prohibiting Defendants from disclosing the PII of their subscribers without consent and in accordance with the VPPA;

F.     An award of attorneys' fees and costs, including pre- and post-judgement interest;

G.     An Order holding that Defendants' disclosure of the Plaintiff's and Class's PII without consent was in violation of the VPPA;

H.     Such further relief that this Honorable Court deems just and proper.

DATED:  Honolulu, Hawaiʻi,___November 27___, 2023.


_/S/ DENNIS W. POTTS_____
**Dennis W. Potts**
Trevor S. Potts
Steven D. Liddle*
Nicholas A. Coulson*
*Pro hac vice* application pending
*Attorneys for the Plaintiff and
Putative Class*

21